RICHARD B. BEALE *vs.* REBECCA E. CRESWELL.

In the absence of proof of usage the mere fact that a property broker introduces the purchaser to the seller, or discloses names by which they come together to treat, will not entitle him to compensation.

But if it appears that such introduction or disclosure was the foundation on which the negotiation was begun and conducted, and the sale made, the broker will be entitled to his compensation.

A trustee, with the assent and approbation of the appellee, one of the *cestui que trusts,* employed a property broker to sell the trust property.    The broker accordingly applied to a person who expressed a willingness to pur-

chase, and this fact was communicated to the appellee who afterwards pur-chased the whole property and took the legal title thereto. The authority of the broker was then revoked, and the appellee subsequently sold the property to the same party who had been applied to by the broker. HELD:

That the revocation of the broker's authority before the sale was made, and after the legal title had passed to the appellee, would defeat his claim for commissions, unless there was fraud in the appellee in the purchase of the property with the view of immediately selling it to the party mentioned by the broker, and thus to avoid paying for his services, and having dis-claimed all such fraud he cannot recover.

APPEAL from Cecil county court.

This was an action of *assumpsit* brought by the appellant, who was a property agent or broker, to recover from the appellee the value of services alleged to have been rendered by him in procuring a purchaser for a certain house in the city of Baltimore belonging to the appellee. The declaration contained the usual *indebitatus assumpsit* counts, and the plea was *non assumpsit*.

*Exception.* The plaintiff proved that defendant, being the owner of three-fourths of a house and lot in the city of Baltimore, united with the owners of the remaining fourth in a deed conveying the property to two trustees to sell it and distribute the proceeds among the owners. That one of said trustees, with the knowledge and approbation of defendant, employed the plaintiff as a property agent or broker, to procure a purchaser for said house and lot, at the stipulated price of $10,000. That plaintiff, in pursuance of this employment, communicated his commission to John B. Morris, who said he might be willing to barter bank stock for it, and at the instance of plaintiff went to view the property, but never saw or conversed with him afterwards on the subject. That some time afterwards Morris met the trustee, who remarked, I understood you were willing to take the house at $10,000, to which Morris answered, he had said he would not give $10,000 but might perhaps barter bank stock for it. That plaintiff communicated his conversation with Morris to the trustee shortly after it occurred, and the latter informed defendant thereof.

Beale *vs.* Creswell.

It was further proved, that the trustees and the owners of the one-fourth subsequently sold and conveyed the property to defendant for $9,500. That when the parties agreed to this sale the trustee who had employed plaintiff as above stated, informed the latter of the sale, and told him he was not to consider himself any longer authorised to sell. That subsequently, while the parties were in a lawyer's office consummating this sale, said trustee left the office and meeting with the plaintiff, the latter asked whether the lady who had purchased the property was willing to sell? to which the trustee replied he did not know, but that she was in the office and could herself inform him; that plaintiff then went into the office, but what there passed was not proved. That afterwards the defendant sold said house and lot to said Morris for $10,000 in cash, which she received for her own use.

It was further proved that, by the usage of property brokers in the city of Baltimore, it was their business to find a person willing to become a purchaser, and make it known to the seller, and that if a person named and introduced by them to the seller, purchases the property by any agreement, for the price stipulated with the broker, or for less, the latter is entitled to his commissions, usually two and-a-half per cent. on the amount of sales, although he may have had no agency in negotiating the terms of sale, his duty being only to find a person willing to buy on such terms as may, after negotiation, prove acceptable to the seller.

The plaintiff thereupon, stating at the time, that he disclaimed all purpose or intention of fraud on the part of defendant, and did not rely on the existence of fraud, asked of the court three instructions to the jury, in substance as follows: 1st. That from the facts above stated the plaintiff is entitled to recover, provided they find that defendant adopted and took for her exclusive benefit the said Morris as the purchaser of her property, thus acting upon the information given by the plaintiff. 2nd. That if they find that defendant knew that plaintiff, in his character as broker, offered the property in question to Morris, and in the same character communicated the infor-

mation of his reply to said trustee, which information after-
wards came to defendant's knowledge, either through the
plaintiff himself or said trustee, and that defendant acted upon
such knowledge and information, and entered upon negotia-
tion with said Morris, and actually sold the property to him for
$10,000, then plaintiff is entitled to recover, and defendant
cannot be allowed to take advantage of the labor of the plain-
tiff without a corresponding compensation. 3rd. That there
is evidence in the cause upon which the jury may find a ver-
dict for the plaintiff. Each of these instructions the court,
(CHAMBERS, C. J., and ECCLESTON, A. J.,) refused to give,
as the plaintiff had waived and disclaimed all fraud on the part
of defendant and all right to recover on the ground of fraud.
To each refusal the plaintiff excepted, and the verdict and
judgment being against him he appealed.

The cause was argued before LE GRAND, C. J., MASON
and TUCK, J.

*Grafton L. Dulaney,* for the appellant, referred to, and relied
upon, the case of *Keener vs. Harrod and Brooke,* 2 *Md. Rep.,*
63, as conclusive of the appellant's right to recover in this
case.

*Otho Scott* for the appellee.
The facts of this case are different from those in the case
in 2nd *Md. Rep.,* 63, for in this case the broker failed to make
a sale. His authority was to sell for money, and the offer of
Morris was to barter bank stock for the property. He was
originally employed as the agent of the trustee, and after the
appellee became the purchaser his agency was expressly re-
voked, and there is no proof that he ever acted as her agent.
If a sale is made and the vendee then sells to some one who
intended to be a purchaser at the first sale, is the broker en-
titled to his commission? All fraud on the part of the ap-
pellee is expressly waived.

*Dulaney* in reply.

If the appellee knew that the appellant, in his character as agent, sough for and found a purchaser, and then used this information for her own benefit, the law will imply a request and a promise to pay, because she took and used the *property* of the appellant, for the law presumes that a party intends to do right. 14 *Mass. Rep.*, 174.   4 *M. and Selw.*, 275.   13 *East.*, 399, 404.   *Cummings on Contracts*, 4.   43 *Law Lib.*, 135.   6 *G. & J.*, 316.   2 *H. & G.*, 14.   2 *G. & J.*, 343.   1 *Saunders*, 264.

Again, the facts of this case bring it within the case in 2 *Md. Rep.*, 63. There is no separation between the purchase by Morris and the services of Beale. If the design to sell was not abandoned by the appellee then all the acts constitute part of one and the same transaction. The abandonment of the design by one of the original parties is no proof that all the others abandoned it also.

MASON, J., dissented, and delivered the following opinion:

I am of the opinion that the plaintiff's second prayer ought to have been granted.

If the sale to Mr. Morris was the fruit of the labor and skill of the plaintiff previously rendered, the defendant ought to pay for them, and that fact ought to be left to the jury. The mere circumstance of having changed her relation to the property, from part to sole owner, whether this was done to evade her responsibility to the defendant or not, does not, in my opinion, vary the question. Nor did the revocation of the authority of the plaintiff change the case. This revocation did not take place until after the service had been rendered, and the defendant placed in a condition to profit by it. *Keener vs. Brooke and Harrod*, 2 *Md. Rep.*, 63.

My opinion is, the judgment ought to be reversed and the cause remanded.

Le Grand, C. J., delivered the opinion of this court.

This action was instituted to recover for services alleged to have been rendered by the appellant to the appellee in the ascertaining and naming of a person who was willing, and did, in fact, purchase property from the appellee. It appears from the record that a house and lot in the city of Baltimore was held by trustees for the benefit of certain *cestui que trusts*, of whom the appellee was one, and that she being anxious to dispose of the property, one of the trustees applied to the appellant, a broker, to procure a purchaser. This was done with the assent and approbation of the appellee. In pursuance of his authority the appellant applied to J. B. Morris, who expressed a willingness to purchase, provided bank stock would be taken in payment. Subsequently to this, the appellee purchased out the interest of the other *cestui que trusts*, and the appellant was informed that his power to effect a sale was at an end. Afterwards, the appellee sold the property to Morris. On this state of facts the plaintiff claims his right to recover his commission as broker, and the case of *Keener vs. Harrod and Brooke*, 2 *Maryland Rep.*, 63, is relied upon to support it. In that case it was held, that in the absence of proof of usage "the mere fact of the agent having introduced the purchaser to the seller, or disclosed names by which they came together to treat, will not entitle him to compensation; but if it appears that such introduction or disclosure was the foundation on which the negotiation was begun and conducted, and the sale made" the agent was entitled to his compensation.

In the case now before us the authority of the agent was revoked before the sale was effected and after the legal title had passed to the appellee. This circumstance would defeat the claim of the broker unless there was fraud in the appellee in the purchase of the property with the view of immediately selling it to the party mentioned by the broker, and thus availing herself of the information derived from him with the design of avoiding paying for his services. But in the case before us all the prayers *expressly disclaim all fraud on the part*

26    v.3

*of the appellee,* and put the question simply on privity of contract.    We think the county court right in rejecting the prayers, and therefore affirm the judgment.

*Judgment affirmed.*